# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DELANA D. DITTERLINE, TERRY L. DITTERLINE, BRYAN A. DITTERLINE, and BRANDON A. DITTERLINE,<br><br>        Plaintiffs,<br><br>        v.<br><br>KITISHA N. RAY, DUSTIN TURSKA, and LYLE WOMACK,<br><br>        Defendants. | Case No. 3:15-cv-01287-JPG-SCW |

## MEMORANDUM AND ORDER

Following a jury trial, defendant Dustin Turska filed a renewed motion for judgment as a matter of law and a motion for a new trial. (Docs. 90, 91.) For the following reasons, the Court **DENIES** both motions.

## I. BACKGROUND

This is a Fourth Amendment excessive force case arising from a brawl between a family—the Ditterlines—and law enforcement officers. The parties forcibly disputed the material facts, and the Court outlined those facts in its order granting in part and denying in part the defendants' motion for summary judgment. (*See generally* Doc. 54.) Basically, two of the Ditterlines—Terry and Bryan—quarreled with an officer—Dustin Turska—in a parking lot, and then they allegedly tried to run Turska over with their truck on the way out. Several officers followed Terry and Bryan back to the Ditterline family home, where more parties emerged and skirmished in the yard. The officers then arrested several of the Ditterlines, and the Ditterlines later brought this suit alleging that the officers used excessive force during the arrests. (*Id.*; *see also* Compl., Doc. 6.)

1

The case proceeded to a jury trial. Each Ditterline alleged one or two excessive force claims, but the jury found for the defendants on every claim except one: Terry Ditterline's claim against Officer Dustin Turska. (Doc. 73, pp. 3–4.) The jury awarded Terry Ditterline $500.00 in compensatory damages and $2,000.00 in punitive damages for that claim. (*Id*.) Later, Turska filed two post-trial motions: one renewed motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b) and another one for a new trial. (Docs. 90, 91.)

## II. LEGAL STANDARDS

### A. Judgment as a Matter of Law

The Court may direct entry of judgment as a matter of law during trial if "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." FED. R. CIV. P. 50(a)(1). If the Court denies the motion, the moving party may renew it after entry of judgment on the verdict. FED. R. CIV. P. 50(b). In response to a post-verdict motion under Rule 50(b), the Court may allow the judgment to stand, order a new trial, or direct entry of judgment as a matter of law. FED. R. CIV. P. 50(b)(1).

When ruling on the motion, the Court should consider all of the evidence, but must draw all reasonable inferences in favor of the non-moving party and must not make credibility determinations or weigh the evidence. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). "That is, the court should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'" *Id.* at 151 (quoting 9A C. Wright & A. Miller, *Federal Practice and Procedure* § 2529, at 300 (2d ed. 1995)). This standard mirrors the standard for summary judgment. *Reeves*, 530 U.S. at 150 (citing *Anderson*

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-51 (1986)); *Murray v. Chicago Transit Auth.*, 252 F.3d 880, 887 (7th Cir. 2001).

## B. Motion for a New Trial

Rule 59(a)(1)(A) allows the Court to grant a new jury trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." This includes where the verdict is against the manifest weight of the evidence or the trial was unfair to the moving party. *Venson v. Alamirano*, 749 F.3d 641, 657 (7th Cir. 2014); *Kapelanski v. Johnson*, 390 F.3d 525, 530 (7th Cir. 2004). A verdict is against the manifest weight of the evidence only if, viewing the evidence in favor of the non-moving party, no rational jury could have rendered the verdict. *EEOC v. AutoZone, Inc.*, 809 F.3d 916, 919 (7th Cir. 2016).

To win a new trial based on an erroneous jury instruction, the movant "must show that: 1) the instructions did not adequately state Seventh Circuit law[,] and 2) it was prejudiced by the error because the jury was likely confused or misled." *Susan Wakeen Doll Co., Inc. v. Ashton Drake Galleries*, 272 F.3d 441, 452 (7th Cir. 2001). This analysis "is guided by common sense." *Guzman v. City of Chicago*, 689 F.3d 740, 745 (7th Cir. 2012) (citing *Lewis v. City of Chi. Police Dep't*, 590 F.3d 427, 433 (7th Cir. 2009)). The Court must ensure that the "correct message [was conveyed] to the jury reasonably well" when viewed in the light of the other instructions, the evidence, and the arguments in the case. *Id.* (quoting *Gile v. United Airlines, Inc.*, 213 F.3d 365, 375 (7th Cir. 2000).

## III. ANALYSIS

### A. Turska's Motion for Judgment as a Matter of Law

First, the Court cannot grant Turska's motion for judgment as a matter of law. Turska complied with the procedural rules—he made his first motion during trial and renews it now—

but his arguments ask the Court to weigh the evidence and make credibility determinations. Basically, Turska argues that since Terry Ditterline testified that he does not know which specific officers yanked his arms behind his back and handcuffed him—and because defendants Turska and Womack testified that Turska did nothing but place the handcuffs on Terry Ditterline—Turska is not liable as a matter of law. (Doc. 90, pp. 15–16.)

The Court cannot accept that argument. Seventh Circuit precedent makes clear that pursuant to the Fourth Amendment, an officer "may not knowingly use handcuffs in a way that will inflict unnecessary pain or injury on an individual who presents little or no risk of flight or threat of injury." *Stainback v. Dixon*, 569 F.3d 767, 772 (7th Cir. 2009) (citing *Herzog v. Vill. of Winnetka, Ill.*, 309 F.3d 1041, 1043 (7th Cir. 2002)). This inquiry is rooted in the Fourth Amendment's reasonableness standard, and it depends upon the circumstances of the arrest. *Id*. (citing *Payne v. Pauley*, 337 F.3d 767, 779 (7th Cir. 2003)). And this trial was all about the factual circumstances of Terry Ditterline's arrest: the brawl at the Ditterline home; Terry Ditterline's health issues and alleged cries of pain; Turska's admission that he placed the handcuffs on Ditterline; and more. The jury then found Turska liable for using excessive force under the circumstances. The Court cannot toss the jury's finding aside, weigh the evidence, and decide if Turska's and Womack's testimony is credible—that was a matter for the jury, and that matter is closed. *Reeves*, 530 U.S. at 150.

### B. Turska's Motion for a New Trial

There are two problems in the motion for a new trial. The first is simple. Turska argues that the verdict was against the manifest weight of the evidence for the same reasons in his renewed motion for judgment as matter of law: no reasonable jury could have found that Turska used excessive force when he allegedly only placed the handcuffs on Terry Ditterline. But again,

this is incorrect for the same reasons as above: there was plenty of evidence at trial that a jury may have considered when coming to its verdict, including the circumstances of the brawl, Terry Ditterline's health issues, his alleged capitulation to the officers, Turska's admission that he handcuffed Terry Ditterline, etc. A rational jury could find Turska liable under these circumstances. *AutoZone, Inc.*, 809 F.3d at 919.

The second issue is thornier. At trial, the Court gave a non-pattern jury instruction—requested by the Ditterlines—that reads as follows:

> You have heard the sworn testimony of Dustin Turska that he instructed Terry Ditterline that he was being detained because he failed to identify himself and that he could not leave until he presented an ID.
>
> You are instructed that as a matter of law, Dustin Turska was without lawful authority to require Terry Ditterline to produce an ID, and was without lawful authority to detain Terry Ditterline if he refused to produce an ID.
>
> Dustin Turska also testified that after Terry Ditterline refused to produce an ID, Terry Ditterline drove his truck so that Officer Turska had to jump out of the way of that truck in order to avoid being hit by the truck.
>
> You are further instructed that if you decide that this happened and that Dustin Turska reasonably believed that Terry Ditterline was attempting to injure him, Dustin Turska then had lawful authority to make an arrest and detain Terry Ditterline.
>
> These are questions that you will have to determine when you retire to deliberate on your verdict in this case.

(Doc. 78, p. 14.) The defendants objected at trial to this instruction—specifically to the third and fourth paragraphs—and Turska renews that objection now. (Doc. 91.) He argues that the instruction confused the jury because it states the law for an unlawful arrest claim—not an excessive force claim, which is the only cause of action by Terry Ditterline against Turska. *Susan Wakeen Doll Co., Inc.*, 272 F.3d at 452. He further points to a note that the jury submitted to the Court during their deliberations, which asks:

5

> If we agree that Turska did not have reasonable justification for pursuing T. Ditterline, would that then deam [sic] any force that occurred at the Ditterline residence "unreasonable" as it should never have occurred?

(Doc. 74.) The Court responded: "I am unable to answer this question for you. Please re-read all the instructions." (*Id.*) Regardless, Turska's argument fails for three reasons: (1) the challenged instruction was necessary in light of all of the facts of this case; (2) the challenged instruction was not confusing in light of the rest of the instructions; and (3) the jury's question is not enough to show that they were confused to the point of prejudice to Turska.

First, the challenged instruction was necessary: before trial, the Ditterlines had filed a motion in limine that sought to prevent the officers from testifying that Terry and Bryan Ditterline had committed a crime before the brawl by failing to identify themselves to Turska at the parking lot. (Doc. 64, p. 2.) The Ditterlines wanted to exclude this evidence because excessive force claims balance "the totality of the circumstances at the time of the arrest," *Chelios v. Heavener*, 520 F.3d 678, 689 (7th Cir. 2008), and the Ditterlines did not think the jury should be able to consider the Ditterlines' failure to identify themselves to the officers when that failure does not actually constitute a crime. The Court held oral arguments on the motion and expressed concerns that if the parties were not able to introduce the full swath of evidence of what happened at the parking lot—including when Officer Turska walked up to Terry Ditterline's truck, told him he was being detained for failure to identify, and when Terry Ditterline allegedly almost ran Officer Turska over in response—then there would have been bizarre gaps in the facts of this story for the jury. (Doc. 95, 13:3–25.) The Court reserved ruling on the motion in limine until closer to the trial date. (Doc. 69.)

On the morning of trial, and for the reasons outlined above, the Court denied the motion and instead decided that a jury instruction on the matter was the better route. So the Court

allowed the parties to submit all of the evidence about what happened at the parking lot, but also instructed the jury that (1) failing to produce identification to an officer is not a crime; and (2) nevertheless, Turska had the lawful authority to go after and arrest Terry Ditterline if the jury found that Terry tried to run Turska over with his truck—just as the Ditterlines requested in their non-pattern instruction. (Doc. 78, p. 14.)

Next, the challenged instruction was not confusing when looking at all of instructions in tandem. *See Schobert v. Illinois Dep't of Transp.*, 304 F.3d 725, 730 (7th Cir. 2002) (Courts look "at jury instructions in their entirety when determining whether they properly informed the jury of the applicable law… [w]e are not looking for an idealized set of perfect jury instructions… but the jury instructions must be correct legal statements and supported by the evidence.") (citing *Reed v. Union Pac. R.R. Co.*, 185 F.3d 712, 715 (7th Cir. 1999)) (further internal citations omitted). The Court instructed the jury here (1) that this was an excessive force case; (2) what the elements of excessive force are; (3) what the jury should consider when determining whether a use of force was "reasonably necessary." (Doc. 78 at pp. 9, 11–12.) And the instruction on the definition of reasonable force came directly from Seventh Circuit Pattern Civil Instruction 7.10:

> In performing his job, an officer can use force that is reasonably necessary under the circumstances.
>
> In deciding whether a Defendant used unreasonable force, you should consider all of the circumstances. You must decide whether a Defendant's use of force was unreasonable from the perspective of a reasonable officer facing the same circumstances that the Defendant faced. You must make this decision based on what the officer knew at the time of the use of force, not based on matters learned after the use of force. In deciding whether a Defendant's use of force was unreasonable, you must not consider whether the Defendant's intentions were good or bad.

(Doc. 78, p. 12.) As the plaintiffs point out, "[n]o one would think that Turska had used too much force if it followed shortly after an armed robbery. Everyone would think that handcuffing

7

a disabled man for a parking violation would constitute excessive force." (Doc. 97, p. 4.) And that is exactly why the challenged instruction was necessary: it allowed the parties to set the factual stage that led to the use of force, but it also instructed the jury on the legality of the pieces on that stage so that they did not incorrectly weigh them in their deliberations.

Finally, the fact that the jury asked a question does not necessarily indicate that they were confused: most jurists—whether they sit in a jury box, on a United States District Court, on the Seventh Circuit Court of Appeals, or on the Supreme Court—ask questions to test and develop arguments. That does not mean that they are "confused or misled." *See Susan Wakeen Doll Co., Inc.*, 272 F.3d at 452.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Dustin Turska's renewed motion for judgment as a matter of law and motion for a new trial. (Docs. 90, 91.)

**IT IS SO ORDERED.**

**DATED: MAY 29, 2018**

                  *s/ J. Phil Gilbert*
                  **J. PHIL GILBERT**
                  **DISTRICT JUDGE**